*Elijah Bobby Williams*
*United States Penitentiary Tucson*
*Post Office Box 24550*
*Tucson, Arizona. 85734*

Docket No. _____

FILED ✓ ____ LODGED
____ RECEIVED ____ COPY

7   **MAY - 1 2018**   7

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

---

In The
United States District Court
For the District of Arizona

**CV18-0232 TUCFRZLAB**

---

Elijah Bobby Williams
Petitioner

v.

*Mr. Rhodes*

Warden
U.S. Penitentiary Tucson
Respondent

---

Petition For a Writ of Habeas Corpus
Pursuant to 28 USC § 2241
By a Person in Federal Custody

---

Pro-se
Litigant

*Elijah B. Williams*
Petitioner

Comes now, the petitioner, Elijah Bobby Williams pro-se in the above entitled action, humbly before this court requesting relief pursuant to 28 USC § 2241.

In support of this requested relief, the petitioner offers the following.

## I. Jurisdiction

A Federal District Court may not entertain a Habeas Corpus action unless it has jurisdiction over the custody of the person seeking relief, <u>Braden v. 30th Judicial Circuit Court</u> 410 US 484 (1973).

This instant petitioner submits that he is designated or is otherwise in custody at the United States Penitentiary at Tucson, in Tucson, Arizona. As such, pursuant to Title 28 USC § 2241, the proper court to entertain this Habeas action, as a result of the petitioners custodial location, is the United States District Court for the District of Arizona.

Furthermore, pursuant to Title 28 USC § 2241, an application for a writ of Habeas Corpus is made by a person in federal custody under judgement and sentence of a federal court.

This instant applicant is therefore properly filed as the petitioner is in custody pursuant to the laws of the United States and is designated in the District of Arizona.

Lastly, the proper respondent is Warden ~~Mr. Martin~~ *Mr. Rhodes* of the USP Tucson where in the petitioner is confined.

-1-

## II. Procedural Posture

The petitioner proceeded to trial by jury in the United States District Court for the Southern District of New York and on May 13, 2005, was found guilty of the following:

13 counts of RICO in violation of 18 USC § 1962

On August 17, 2005 the petitioner was sentenced to a term of life imprisonment.

The petitioner filed a timely notice of appeal with the United States Court of Appeals for the Second Circuit. Oral arguments took place on April 16, 2007 and on October 23, 2007 the court affirmed the petitioners conviction and sentence.

A timely petition for certiorari was made to the United States Supreme Court, who denied said writ on March 24, 2008.

The petitioner filed a § 2255 motion, which was denied by the District Court on July 28, 2011.

The petitioner now files this instant motion pursuant to 28 USC § 2241 and represents that there are no other motions pending in any other court with the exception of this instant motion.

-2-

### III. 28 USC § 2241 Filing

A federal prisoner who seeks to challenge the legality of his confinement must generally rely on a § 2255 motion to do so, Stevens v. Herrera 464 F.3d 895 (9th Cir. 2006).

The general rule is that a motion pursuant to § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention and that the restriction on the availability of a § 2255 motion cannot be awarded through a petition under § 2241.

There is, however, and exception to the general rule, under the "escape hatch" of § 2255(e), a federal prisoner may file a § 2241 petition if the remedy under § 2255 is inadequate or ineffective to test the legality of his detention.

This circuit has held that a prisoner may file a § 2241 petition pursuant to § 2255(e) or otherwise, the escape hatch, when a prisoner makes a showing of:

    (1) A claim of actual innocence, and
    (2) As a result of that claim, the petitioner
        has not had an unobstructed procedural
        shot at filing his claim.


[See Marrero v. Ives 682 F.3d 1190 (9th Cir. 2012)]

Although this circuit has not considered or otherwise endorsed any exceptions to the general rule that a petitioner cannot be actually innocent of a non-capital sentence enhancement under the escape hatch, the Ninth Circuit has identified three (3) categories of exceptions to which it may entertain endorsing to wit;

    (1) Some circuits have held that a prisoner may be actually innocent of a sentencing enhancement if he was factually innocent of the crime that served as a predicate conviction for the enhancement.

    (2) Some circuits have suggested that a prisoner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible, and

    (3) Some circuits have left open the possibility that a petitioner might be actually innocent of a sentencing enhancement if the sentence resulted from a constitutional violation.

In determining whether a petitioner has had an unobstructed procedural shot to pursue his claim the court considers,

    (1) Whether the legal basis for the petitioners claim did not arise until after he exhausted his direct appeal and § 2255 motion, and

    (2) Whether the law has changed in any way relevent to the petitioners claim after the filing of his § 2255 motion.

[See Harrison v. Oliver 519 F.3d 952 (9th Cir. 2008)]

-4-

This circuit has held that an inmate fails to make such a showing where he does not claim actual innocence of the crime of conviction, "or" allege that he was sentenced to a greater term of imprisonment than authorized by statute.

The use of the disjunctive "or" leaves no room for interpreting or otherwise holding that the petitioner must satisfy both the criteria set forth in order to bring a cognizable claim in this circuit.

The petitioner, therefore, respectfully submits that he meets the criteria to satisfy the savings clause of § 2255(e) or otherwise § 2241.


IV. The effects of Persaud
with respect to §2241
petitions.

On August 29, 2013, Andre Persaud filed a petition for a writ of certiorari with the United States Supreme Court.[1]

Rather than opposing the petition, the United States Solicitor General filed a brief "in support" of Persaud's petition.

_____

1 Persaud v. United States (No. 13-6435)

-5-

The Solicitor General, on behalf of the Government asserted
that it is the Governments position that imposing a sentence
when the conviction is legally ineligible to justify the sentence
is a fundamental error that my properly support relief under § 2241.
As a result, the Supreme Court granted the petition and remanded
to the Fourth Circuit for "further consideration" in light of
the position asserted by the Solicitor General on behalf of the
United States.

On April 28, 2014, Persaud and the Government filed a "joint
motion to remand" with the Court of Appeals. In that joint brief,
the Government contended that,

(1) Persaud was sentenced for an offense of
which he was legally ineligible, and,

(2) Such a complete depravation of sentencing
discretion by the erroneous imposition of
a sentence is a fundamental error that
itself violates due process

---

[2] <u>Persaud v. United States</u> No. 12-8068 Dk. No. 22

On May 7, 2014, the Court of Appeals for the Fourth Circuit granted the motion to remand, stating that,

> "...We remand this matter to the District Court so that the court may consider the Governments argument in favor of relief in the first instance."[3]

In sum, the Government reversed course on the question of whether a sentencing error warrants correction under the savings clause when the defendant has no opportunity to raise the issue in prior motions.

Thus, the Government, as a result of the Solicitor General's position, has spoken with "one voice" in conceding that an erroneous sentence above the statutory maximum is a "fundamental defect" that warrants correction.[4]

The concession binds every U.S. Attorney's Office in the nation, whereby during oral argument the Government conceded that is speaks with one voice when it comes to making concessions.

---

3 <u>Persaud</u> Dk. No. 25 at page 25

4 <u>Southern Union Co v. United States</u> 132 SCt 0344 (2012)

5 December 12, 2012, Tr. Doc. No. 169 at 6:22-7:7

Therefore, a concession made by the Government is in consultation with the Solicitor Generals office is one that the Government must follow nationwide.

The position asserted by the Government in its reply to Persauds § 2241 motion is important and applicable to this instant petitioner for the following reasons:

      (1) It affirms that the lower courts, such
           as this court may now conclude that
           the savings clause permits petitioners
           to seek relief by way of § 2241 in
           challenging their conviction without
           having to make a showing of actual
           innocence.

      (2) That the erroneous imposition of a
           sentence is a fundamental defect that
           warrants correction under the savings
           clause when the defendant otherwise had
           no "prior" opportunity to raise the issue.

Of course, <u>Persaud</u> is "not" a court opinion, but rather the Solicitor General's position which was adopted by the United States Supreme Court.

                V. The recent holding in
                   <u>Webster</u> entitles this
                   petitioner to challenge
                   his sentence under a
                   § 2241 motion

The United States Supreme Court doctrine in <u>Teague v. Lane</u> 489 US 288 (1989) governs the conditions under which a prisoner, who has exhausted his appeals is entitled to retrial, resentencing or even release based on a change in the law. Newly announced

-8-

due process decisions unavailable to the prisoner at trial or on direct review can provide a constitutional basis to reopen the verdict or punishment.

The Supreme Court and Court of Appeals, however, have imposed strikingly demanding requirements for backdating any such ruke to a finalized conviction or sentence.

They have, since Teague, held that no due process rule applies retroactively unless it is a "watershed" protection that profondly enhances not only the accuracy of convictions across the board, but also, "our very understanding of the bedrock procedural element."

In Webster v. Daniels 784 F.3d 1123 (7th Cir. 2015) the defendant was convicted of a federal capital offense and sentenced to death.

The Fifth Circuit denied Webster's application for permission to pursue a second collateral attack. Having exhausted his opportunities with the Fifth Circuit, where the crime and the trial occured, Webster requested collateral relief pursuant to 28 USC § 2241 in the Southern District of Indiana, where he is confined.

-9-

Webster's guilt and his actions are uncontested. He sought to persuade a jury, and a judge that his is not eligible because he is mentally retarded.[6]

The court dismissed Webster's § 2241 petition because he failed to demonstrate inadequacy or ineffectiveness of § 2255 and he was not relying on a retroactive decision from the Supreme Court.[7]

In light of the importance of the issue, the Seventh Circuit Court of Appeals granted an en banc hearing.[8] The original opinion was vacated. The en banc court concluded that there is no absolute bar to the use of the escape hatch found in § 2255(e) for evidence that would demonstrate categorical ineligibility for a death penalty.


        (i)   The Savings Clause

§ 2255(e)'s savings clause is a statutory mechanism that allows federal prisoners to invoke § 2241 petition when a § 2255 motion is "inadequate" or "ineffective" to test the legality of

---

[6] <u>Atkins v. Virginia</u> 536 US 304 (2002) holding that the constitution forbids the execution of persons who are retarded or otherwise unable to understand what capital punishment means and why they have been sentenced to die.

[7] <u>Webster v. Caraway</u> 761 F.3d 764 (7th Cir. 2014)

[8] <u>Webster v. Caraway</u> 769 F.3d 1194 (7th Cir. 2014)

the prisoners detention. Most circuits have recognized a right to invoke the "savings clause" when the Supreme Court reinterprets a federal statute in a way that brings to question a defendant's conduct and whether or not it is still considered criminal.[9]

The Seventh Circuits decision in Webster is significant because it holds that federal prisoners may also use § 2241 to challenge a sentence. At issue was whether Webster, on death row, could use a § 2241 to assert a claim under Atkins, supra, to reduce his sentence. Atkins, a decision with both substantive and procedural components, like Apprendi[10] holds that intellectually disabled prisoners may not be executed.

In considering the savings clause claim, the Seventh Circuit stated in relevant part that:

    (1) It is fairly possible to read § 2255(e) as encompassing challenges to both convictions and sentences that as a structural matter cannot be entertained by the use of a § 2255 motion.

    (2) The savings clause "focuses on detention" as a whole, not the underlying offense,

    (3) A core purpose of Habeas Corpus is to prevent a custodian from inflicting an unconstitutional sentence [and conviction]

    (4) The fact that Atkins [the constitutional decision underlying the Webster challenge] supports the application of the savings clause

---

9 In Re Jones 226 F.3d 328 (4th Cir. 2000)

10 Apprendi v. New Jersey 530 US 466 (2000)

-11-

(5) In virtually all other situations, Congress has unlimited discretion to select the penalty or the range of penalties that go along with a particular crime. If Congress selects 20 years, but because of some error that went undetected through direct appeals and the § 2255 process, the defendant receives 25 years, there is no doubt a problem, but it is likely not one of constitutional dimensions. Congress should have chosen 25 years to begin with and the defendant would have nothing to complain about.

Point five (5) is extremely important because prior to the Supreme Court's decision in Booker[11] the sentencing courts authority was constrained to impose a sentence from within the range proscribed by the sentencing guidelines.

In Blakely v. Washington 542 US 296 (2004) the Supreme Court held,

"...our precedent made clear...that the statuatory maximum sentence a judge may impose soley on the basis of facts reflected in the jury verdict. In other words, the relevant statuatory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts."[12]

This means that all defendants sentenced pre-Booker, when the guidelines were mandatory can argue that their sentences exceeded the maximum authorized "by law" because the guidelines were the functional equivalent of a statute.[13]

---

11 United States v. Booker 545 US 2000 (2005)

12 18 USC § 3553(b)

13 C.F. Scott v. United States 997 F.2d 340 (7th Cir. 1993)

The savings clause therefore focuses on "detention as a whole"[14] earning recognition by the Solicitor General of the United States who agreed that the savings clause focuses on detention as a whole and not just in death penalty matters.

The purpose of the Habeas Corpus is therefore to prevent prison officials from inflicting an otherwise unconstitutional sentence.

## VI. Legal Summary

1. At sentencing, the court imposed enhancements on the petitioners sentence thereby violating the principles announced by the United States Supreme Court in Alleyne.[15]

### (i) The Alleyne Case

The sixth amendment to the United States Constitution proivides that those accused of a crime have the right to a trial by an impartial jury. This right, in conjunction with the due process clause required that each element of the crime be proved to the jury beyond a reasonable doubt, United States v. Gauding 515 US 506 (1995).[16]

The substance and scope of this right depends on whether the proper designation of facts are also elements of the crime.

The United States Supreme Court in Alleyne declared that any enhancements imposed by the court must be found by a jury beyond a reasonable doubt or pleaded guilty to them by the defendant in order for those enhancements to comply with the mandates of the sixth amendment.

---

14 Persaud v. United States 134 SCt 1023 (2014)

15 Alleyne v. United States 570 US _____ (2013)

16 See Also In RE Winship 397 US 358 (1970)

-13-

The touchstone for determing whether a fact must be found
by a jury beyond a reasonable doubt is whether the fact constitutes
an element of the offense, <u>United States v. O'Brien</u> 560 US 218 (2010).

Any fact, therefore. that measures the penalty for a crime
is an element that must be submitted to the jury and found beyond
a reasonable doubt or pleaded guilty to it by the defendant.

The majority opinion in <u>Alleyne</u> was delivererd by Justice
Clarence Thomas who wrote,

> "...Elevating the law end. of a sentencing
> range heightens the loss of liberty
> associated with the crime. The defendants
> unexpected punishment has increased as a
> result of the narrowed range and the
> prosecution is empowered by invoking the
> mandatory minimum to require judges to
> impose a higher punishement than he
> might wish."

The court went on to cite <u>Apprendi</u> stating that,

> "...The defendants ability to predict with
> certainty the judgement from the face of
> the felony indictment flowed from the
> invariable linkage of punishment with
> the crime."

The <u>Alleyne</u> court went on to hold that an indictment must
contain an allegation of every fact which is legally essential
to the punishment to be inflicted.

(ii) The Retroactive Application
of the <u>Alleyne</u> Case

For this court to grant this motion, with respect to <u>Alleyne</u>, the court must find:

That <u>Alleyne</u> announced

(1) a new rule;

(2) of constitutional law,

(3) that was previously unavailable, and

(4) that has been made retroactive by the Supreme Court on collateral review.

It is the petitioners contention that <u>Alleyne</u> announces a rule of constitutional law holding that on increased sentence which is neither found by the jury nor pleaded guilty to by the defendant violates the defendants sixth amendment constitutional right.

Second, the rule was "new" because it was not dictated by precedent existing at the time that the petitioners conviction became final.[7]

No prior precedent dictated the conclusion that judicially imposed enhancements are unconstitutional.

Third, this rule was previously unavailable to the petitioner. the petitioner was sentenced, filed a direct appeal and his § 2255 "prior" to the announcement of <u>Alleyne</u> therefore <u>Alleyne</u> announced a new rule of constitutional law not previously available to the petitioner.

---

17 <u>Chaidez v. United States</u> 133 SCt 1103 (2013)
(quoting <u>Teague v. Lane</u> 489 US 288 (1989)

-15-

Fourth, the petitioner must establish that <u>Alleyne</u>'s new rule was made retroactive to cases on collateral review by the Supreme Court.

The Supreme Court may make a new constitutional rule retroactive to cases on collateral review by explicity so stating in the decision announcing the rule, or may "make a rule retroactive over the course of two cases...with a combination of holdings," <u>Tyler v. Cain</u> 533 US 656 (2001).[18]

For example, one decision holding that a new rule constitutes structural error and a second decision that all structural errors were retroactive would combine to render the new rule one that had been made retroactive by the Supreme Court.

Under the retroactive principles of <u>Teague v. Lane</u> 489 US 288 (1989) new procedural rules are not retroactive to cases on collateral review, but the Supreme Court has established that new substantive rules are retroactively applicable on collateral review, <u>Baisley v. United States</u> 523 US 614 (1998) (see also <u>Beard v. Banks</u> 542 US 406 (2004), holding that rules that fall within what we have referred to as <u>Teague</u>'s first exception are more accurately characterized as substantive rules not subject to <u>Teague</u>'s bar.[19]

The rule announced in <u>Alleyne</u> is retroactive as it substantially limits on constitutional grounds judicially imposed enhancements to increase a defendants sentence. <u>Alleyne</u> effectively alters a sentencing procedure.

Because <u>Alleyne</u>'s rule is substantive, and the Supreme Court has established that substantive rules apply retroactively, this petitioner has therefore made the requisite showing that <u>Alleyne</u> has been made retroactive to cases on collateral review.

---

18 Containing materially identicval language of
  § 2244(b)(2)(A)

19 Quoting <u>Schriro v. Summerlin</u> 542 US 348 (2004)

            (iii) The petitioner was unlawfully
               enhanced pursuant to USSG § 2A1.1


     It is the petitioners contention that in light of the
insufficiency of the evidence presented at the petitioner's
trial, this instant petitioner is actually as well as legally
innocent of the cross-referencing of USSG § 2A1.1 applied to
the petitioner by the court.

     In accordance with the principles announced in both
<u>Persaud</u> as well as <u>Webster</u>, this petitioner did not have
available to him the opinion of <u>Alleyne</u> and therefore had
an obstructed shot at filing his claim.


            (iv) The sentencing court impermissibly
               "cross-referenced" USSG § 2A1.1,
               otherwise first degree murder
               guideline resulting in an enhanced
               offense level of 43.


     The base offense level of the petitioner was determined
to be a level 43 [Life] predicated on the following recommendation
of the United States Probation Office pursuant to the PSR.

        "...these counts will be cross-referenced
        to the first degree murder guideline under
        USSG §2A1.1(a) which calls for a base
        offense level of 43."[20]

     The United States Sentencing Guideline, with respect to
USSG § 2A1.1, which was applied to the petitioner as a cross
reference, read as follows,


_____

20 please see PSR


                   -17-

USSG § 2A1.1

 (1) If a victim was killed under circumstances
  that would constitute murder under 18 USC
  § 111, had such a killing taken place within
  the territorial or maritime jurisdiction of
  the United States, apply § 2A1.1 [First degree
  murder]

First degree murder, otherwise 18 USC § 111(a) is defined
as the following:

 (a) Murder is the unlawful killing of a human being
  with malice aforethought. Every murder perpetrated
  by poison, lying in wait, or any other kind of
  willful, deliberate, malicious and premeditated
  killing, or committed in the perpetration of or
  attempt to perpetrate any arson, escape, murder,
  kidnapping, treason, espionage, sabotage,
  aggravated sexual abuse, sexual abuse of a child,
  burglary, robbery, or perpetrated as part of a
  pattern or practice of assault from a premeditated
  design, unlawfully and maliciously to effect
  the death of any human being other than him
  who is killed is murder in the first degree.
  Any other murder is murder in the second degree.

With respect to this instant petitioner, the indictment
against this petitioner states as follows:

 Count I - The conspiracy to murder Timothy Moore
    and Robert Jones...The indictment alleges
    that the petitioner unlawfully, willfully
    and knowingly conspired to murder Timothy
    Moore and Robert Jones.

    The petitioner murdered Timothy Moore
    and that the petitioner knowingly, unlawfully
    and willingly murdered Timothy Moore.

    The petitioner murdered Robert Jones and
    that the petitioner knowingly, unlawfully,
    and willingly murdered Robert Jones.

    The petitioner unlawfully, willingly, and
    knowingly murdered Joel Moore

```
Count IV - The conspiracy to murder Timothy Moore
           and Robert Jones...The indictment alleges
           that the petitioner unlawfully, willfully,
           and knowingly conspired to murder Timothy
           Moore and Robert Jones

Count V - The petitioner unlawfully, willingly, and
          knowingly murdered Timothy Moore

Count VI - That the petitioner willfully, knowingly,
           and unlawfully murdered Joel Moore

Count VII - That the petitioner willfully, knowingly,
            and unlawfully murdered Robert Jones
```

The ostensible purpose or otherwise function of an indictment is to:

(1) Clearly inform the defendant of the precise offense for which he is accused so that he may prepare a defense, and

(2) To enable the defendant to plead an aquittal or conviction in bar of future prosecutions for the same offense[21]

This circuit has held that the corollary purpose of an indictment is to,

(1) ensure that the defendant is being prosecuted on the basis of the facts presented to the jury, and

(2) To allow the court to determine the sufficiency of the indictment.[22]

---

21 Russel v. United States 369 US 749 (1962)

22 United States v. Buckley 689 F.2d 873

-19-

It is generally sufficient that an indictment set forth
the offense in the words of the statute itself, as long as the
words fully and expressly without uncertainty or ambiguity
set forth all the elements necessary to constitute the offense
needed to be punished, Hamling v. United States 418 US 87 (1974)

In the instant matter, and reference to murder or attempted
murder[23] is devoid of the language of the statute or otherwise
elements of the offense which constitute murder in the first degree.

Murder in the first degree requires the Government to allege
and prove, among other things premeditated murder. All other
types of murder absent premeditation constitutes second degree
murder. The Government stated in the indictment charging the
petitioner elements of an offense which constituted murder in
the second degree. However, when sentencing the petitioner, the
court, pursuant to the recommendation of the US Probation Office,
cross-referenced USSG § 2A1.1 which requires a finding of first
degree murder.

In other words, the indictment alleged elements that
constituted second degree murder, the jury, although finding
the petitioner guilty of acts alleging to law, violated the
Racketeering laws[24], those acts purportedly violated murder in
the second degree, the court, however cross-referenced USSG §
2A1.1 which allows a cross reference of first degree murder.

The cornerstone of the sixth amendment, otherwise proof that
a crime was committed, more specific to this case, murder, requires
proof beyond a reasonable doubt. This proof comes in two forms,
either a jury finds proof beyond a reasonable doubt, or the
defendant pleads guilty to the crime.[25] In the instant matter,
that standard was violated when the sentencing court found, by
a preponderance, if at all, that the petitioner was guilty of
murder in the first degree thereby cross-referencing USSG § 2A1.1.

---

23 please see indictment, Counts I, IV, V, VI, and VII

24 18 USC § 1961(1) and 1961 (5)

25 Alleyne, supra

In _Alleyne_, the United States Supreme Court held that the indictment must contain an allegation of every fact which is legally essential to the punishment. The Supreme Court went on to state,

> "...From the widely recognized principles
> followed a well established practice of
> including in the indictment and submitting
> to the jury every fact and element that
> was the basis for imposing or increasing
> a punishment."

In this instant matter, the indictment, alleged if anything at all, elements that constitute second degree murder. The jury found that the facts of the case satisfied the elements alleged in the indictment.

At sentencing, the court cross-referenced USSG § 2A1.1 which allows a cross referencing for first degree murder. The imposition of USSG § 2A1.1 violated the petitioners fifth amendment right to due process as the indictment failed to allege the elements of first degree murder, as well as the petitioners sixth amendment right as the court found by a preponderance that first degree murder was satisfied as opposed to the jury.

-21-

VII. The criminal history of the
     petitioner was misidentified
     resulting in a miscalculation
     of the petitioners criminal
     history score.


In United States v. Cantrell 433 F.3d 1269 (9th Cir. 2006)
this circuit held that when a district court reviews a sentence,
the first step in the court's analysis is to determine if there
was a material error in the guideline calculation that serves
as a starting point for it's sentencing decision.

In the instant matter, this petitioner contends that his
criminal history was wrongly identified and as a result of this
error, the petitioners criminal history category was elevated.

The United States Probation Office, in enumerating the
petitioners prior convictions, for the purposes of calculating
his criminal history score, indicated that one of the cited
felonies[26] should be included in determining the petitioner's
overall score.

A review of this felony reveals that the prior conviction
should have been awarded to the petitioner's brother, and not
the petitioner.[27,28]

_____

26 Which led to an additional three (3) points

27 Wallace Williams (DOB 8-22-58)

28 Please see criminal history

-22-

This error is material in that the three (3) points which were assessed to this prior conviction elevated the petitioner to a higher criminal history category and as a result, a lengthier sentence.

If a material error in the guideline calculation led to an increased sentence, then this court cannot conclude that the error was harmless, United States v. Munoz-Carmona 631 F.3d 1028 (9th Cir. 2011).[29]

It is well established in this circuit that a miscalculation of a criminal history category is to be deemed "harmless error" as long as the error does not change the petitioner's criminal history category, United States v. Sanders 41 F.3d 480 (9th Cir. 1994).[30]

To show that the District Court's error affected the petitioners substantial rights, a petitioner must demonstrate that there exists a "reasonable probability" that the petitioner would have received a different sentence if the district court had not erred, United States v. Hai Waknine 543 F.3d 546 (9th Cir. 2008).

---

29 See also United States v. Kilby 433 F.3d 1135 (9th Cir. 2006)

30 See also United States v. Dominquez-Benitez 542 US 74 (2004)

A reasonable probability is of course, less than a certainty or even a liklihood, <u>United States v. Ameline</u> 409 F.3d 1073 (9th Cir. 2005). A reasonable probability standard is more petitioner friendly than the "more likely than not" standard.[1]

This court, in <u>United States v. Hammons</u> 558 F.3d 1100 (9th Cir. 2008) held that the standard can be met even without direct evidence of what sentence would have been imposed if not for the courts error.

In the instant matter, the petitioner was assessed a criminal history score of nine (9) points which equates to a criminal history category of IV.

It is the petitioners contention that, having removed the petitioner's "Brothers" prior conviction from the petitioner's PSI, the petitioner's true criminal history score is six (6), yielding a criminal history category of III.

---

[1] See also <u>Penson v. Ohio</u> 488 US 75 (1988), <u>United States v. Bonilla-Guizar</u> 729 F.3d 1179 (9th Cir. 2013) holding that an error in calculating a criminal history category was plain error even if the sentence imposed ultimately fell within the guideline range.

This reduction in criminal history category is significant, particulary as it relates to this petitioner.

The petitioner is contesting the impermissible cross-referencing of USSG § 2A1.1. Should this court allow the petitioner to prevail with respect to his argument regarding an impermissible cross-referencing, then the petitioner is no longer an adjusted offense level of 43. As a result, using the sentencing guideline grid, the proper criminal history category is essential in determining the petitioners true sentencing range and as a result, an accurate sentence.

> **VIII.** Count twelve of the petitioners sentence should be eradicated on the legal definition which resulted in the guilty verdict(s) of said counts have been declared unconstitutionally vague and therefore void ab initio.

Count twelve of the petitioners indictment, which subsequently resulted in a guilty verdict alleged that the petitioner used a firearm in relation to a crime of violence [18 USC §924(c)]. This court, and the sentence which resulted therewith can no longer stand.

### (i) The Johnson Case

In United States v. Johnson 135 S.Ct 2551 (2015) the United States Supreme Court faced the issue of whether a conviction for the possession of a sawed off shotgun was a crime of violence pursuant to the residual clause of 18 USC §924(c) otherwise the ACCA.

The overwhelming majority of the court held that imposing a sentence pursuant to the residual clause violates the due process clause of the United States Constitution.[32]

---

32 See Amend. V, U.S. Const.

The Court stated that,

> "...The indeterminancy of the wide ranging
> inquiry required by the residual clause
> both denies fair notice to the defendants
> and invites arbitrary enforcement by judges.
> Increasing a defendant's sentence under the
> clause [residual] denies the due process
> clause."

As a result, the court rendered the residual clause void or otherwise unconstitutional for vagueness.

The residual clause as defined in 18 USC §924(e)(2)(B)(ii) states...

> "...otherwise involves conduct that
> presents a serious potential risk
> of physical injury to another."

(ii) The retroactive application of Johnson

In Welch v. United States 578 US _____ (2016) the United States Supreme Court held that Johnson announced a substantive change of law and as a result, the holding in Johnson should be applied retroactively.

The Court stated that a rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.

By striking down the residual clause as void for vagueness, Johnson changed the substantive reach of the Armed Career Criminal Act, altering the range of conduct or class of persons that the [act] punishes.[33]

The Court states that,

> "...The residual clause is invalid under
> Johnson, so that it can no longer mandate
> or otherwise authorize any sentence...
> Johnson, establishes, in other words, that
> even the use of impeccable fact finding
> procedures could not legitimize a sentence
> based on that clause."[34]

It follows therefore that Johnson is substantive and as a result, retroactively applicable.

---

33 Schriro, supra

34 United States v. United States Coin & Currency 401 US 715 (1971)

-26-

(iii) The Johnson effect with respect
      to 18 USC §924(c)

Section 924(c)(1)(A) provides penalties for a person who...

> "During and in relation to any crime of
> violence, uses or carries a firearm, or
> who, in furtherance of any such crime
> possesses a firearm."[35]

Under 18 USC §924(c)(3) a crime of violence in this context
is defined as...

> "Any offense that is a felony, and
>
> (A) has as an element the use, attempted
> use or threatened use of physical
> force against the person or property
> of another, or
>
> (B) that by it's nature involves a
> substantial risk that physical force
> against that person or property of
> another may be used in the course of
> committing the offense.

In Dimaya v. Lynch 803 F.3d 1110 (9th Cir. 2015) the Ninth
Circuit Court of Appeals held that for purposes of the removability
of a non-citizen [18 USC §16] which provides for the following
definition...

> (a) an offense that has as an element, the
> use, attempted use or threatened use of
> physical force against the person or
> property of another, or
>
> (b) any other offense that is a felony and
> that by its nature involves a substantial
> risk that physical force against the
> person or property of another may be used
> in the course of committing the offense.

In the Northern District of California, in the matter of
United States v. Bell 2016 U.S. Dist. Lexis 11035 (1-28-16) (N.D.
of CA) The court stated that...[36]

_____

35 Please see petitioners indictment, count twelve (12)

36 See also United States v. Thongsouk 2016 U.S. Dist Lexis 12368

-27-

> "I agree with the defendants that
> Section 924(c)(3) residual clause
> cannot stand under Johnson

The Dimaya court reasoned that,

> "...The differences in the language used in the
> ACCA residual clause versus 924(c)(3) residual
> clause are immaterial with respect to the
> reasoning of Johnson.

The existing authority in this circuit therefore compels
the court to extend Johnson to the residual clause of 18 USC §924(c)
[a portion of the federal law with language similar to that of the
residual clause of the ACCA].

Like the ACCA [924(e)], §924(c) provides sentence enhancements
for any person who, "during and in relation to any crime of violence...
uses or carries a firearm, or who in furtherance of any such crime
possesses a firearm."

The core of the Johnson analysis is focused on the indeterminancy
created by application of the categorical approach to the broad
language of the ACCA's residual clause. The analysis of Johnson,
Dimaya must be applied with eqial force to the §924(c) residual
clause.

(iv) The impact to this instant petitioner

Count twelve (12) of the petitioner's indictment reads...

> "On or about February 18, 1996, in the Southern
> District of New York and elsewhere...Bobby
> Williams...the defendant(s) unlawfully, willfully
> and knowingly did use and carry firearms during
> and in relation to a crime of violence for which
> they may be prosecuted in a court of the United
> States."

With respect to Count 12, the court, in its charge to the
jury, instructed the jury that the defendant(s) knowingly used
and carried firearms during and in relation to a crime of violence.

The court went on to instruct the jury what constitutes a
crime of violence, specifically pursuant to 18 USC §924(c)(3), the
court stated that,

> "...A crime of violence means any crime that is
> a felony and that by its very nature involves a
> substantial risk that physical force against the
> person or someone may be used in the course of
> committing the offense."

-28-

As this court can plainly see, the definition of a crime of violence as charged by the court in determining the guilt of the petitioner is identical with respect to what defines a crime of violence in the now, unconstitutionally declared residual clause.

Therefore, with respect to the instant matter, the new substantive rule, witch includes the decision to narrow the scope of a criminal statute by reinterpreting what constitutes a crime of violence, in addition to the constitutional determination that the previous definition of a crime of violence placed particular conduct beyond the courts power to punish.[37] This is because any decision holding that a substantive federal criminal statute does not reach certain conduct will necessarily carry a significant risk that a defendant stands convicted of an act that the law no longer makes criminal.[38]

Such substantive rules "alter the range of conduct or the class of persons that the law punishes."

Furthermore, the United States Sentencing Commission Guidelines, defines a violent crime as follows,[39]

> (1) Has as an element the use, attempted use or threatened use of physical force against the person of another.

The definition or otherwise what constitutes a crime of violence has been applied consistently in our judicial system, whether it be the residual clause or USSG §4B1.2(a)(1) or the courts jury charge in this instant matter.

As such, this court must, consistent with this circuits precedent, grant the petitioner relief by eliminating count 12 of this indictment.

### IX. The Government witnesses who testified against the petitioner have now recanted their testimony necessitating a hearing.

The Government, during the petitioner's trial, presented testimony from witnesses that the Government claimed to be material to the determination of guilt of the petitioner. The testimony of the Government witnesses ultimately led to the verdict of guilty announced by the jury.

Since the petitioners trial, most of these witnesses have come forward and have now, for various reasons later discussed, are recanting the testimony they proffered during the petitioners trial.[40]

---

37 <u>Schriro</u>, supra

38 <u>Bauerly</u> 523 US at 620

39 USSG §4B1.2(a)(1)

40 Please see attached affidavits and statements

Therefore, predicated on the recantation of these material
witnesses, the petitioner asserts his innocence and submits that,
absent the testimony of these witnesses at trial, or otherwise
had the aforementioned witnesses testified as they stated in the
attached affidavits, a reasonable jury would not have rendered
a verdict of guilty but rather would have acquitted this instant
petitioner.

As a general matter, this circuit has maintained that
recantation testimony is properly received with some suspicion,
Allen v. Woodford 395 F.3d 979 (9th Cir. 2004).[41]

Recantation evidence is contradictory evidence and complex,
nuances, fact intensive inquiry into the comparative reliability
of inculpatory statements and recantations, including the
circumstances under which the statements were made, Santos v.
Thomas 779 F.3d 1021 (9th Cir. 2014).

This circuit has consistently held that when assessing
recanting testimony, the court must seek for personal motives
with respect to the changing of the witnesses testimony, Carriger
v. Stewart 132 F.3d 463 (9th Cir. 1997), as well as the timing
of the witnesses recantation and the contents of the earlier
testimony.[42]

> (i) The witnesses who testified during
> the petitioners trial were conflicted
> in their testimony as they suffered
> from threats and intimidation from
> the Government.

It is well established that Governmental interference with
a witness' free and unhampered choice to testify amounts to a
violation of due process, United States v. Vavages 151 F.3d 1185
(9th Cir. 1998).[43] (A states willful intimidation of a critical
witness is a violation of due process, Smith v. Baldwin 510 F.3d
1127 (9th Cir. 2007))

In accordance with the attached affidavits, it should be
clear to this court that the Government not only interfered with
the testimony of the witnesses, but in some instances blatantly
intimidated the witnesses to testify in favor of the Government.[44]

41 See also Supreme Court holding in Dobbert v. Waignwright
   468 US 1231

42 See also Christian v. Frank 595 F.3d 1076 (9th Cir. 2010)

43 See also Webb v. Texas 409 US 95 (1972)

44 Affidavit of Carol Johnson who was not only threatened with
   prosecution, but was also told that the Government would remove
   her child from her home if she didn't testify on behalf of
   the Government.

Undue prosecutorial interference in a witnesses decision to
testify arises when the prosecutor harasses or intimidates the
witness, or in the alternative, discourages a witness from testifying.

The intent to cause a witness to testify in a particular matter
or not to testify at all constitutes a due process violation,
United States v. Lord 711 F.2d 887 (9th Cir. 1983).

A defendant's constitutional rights are substantially implicated
when the prosecutor employs coercive or intimidating language or
tactics that substantially interfere with a witness.

In C.f. Williams v. Woodford 384 F.3d 567 (9th Cir. 2004) the
Court stated that,

> "...harassment, intimidation or coercion
> of a witness is evident...intent [by the
> Government] is not an issue, rather,
> if the interference was substantial and
> it affected the witnesses testimony is
> determinative."

Clearly, in the instant matter, the Governments coercive
techniques not only affected, but rather dictated the testimony
provided by the witnesses against the petitioner.

(ii) A hearing is required with respect
to the recanted testimony.

A defendants constitutional rights are substantially implicated
whern a prosecutor employs coercive or intimidating language or
tactics which interfere with the testimony provided by a witness.

In United States v. Pierce 62 F.3d 818 (9th Cir. 1995) the
Court held that, when under the totality of the circumstances
the substance of what the prosecutor communicates to the witness
is a threat and the record is deviod of such a threat or coercive
measures, it is therefore necessary and proper to conduct an
evidentiary hearing.

Evidence of coercion and Governmental threats is material
if there is a reasonable probability that had such tactics been
disclosed, the credibility of the recantation could be determined.
Therefore, a hearing to disclose such evidence is necessary, In
Re Extradition of Singh 170 F.Supp 2d 982 (9th Cir. 2001).

In United States v. Morrison 535 F.2d 223 (3d Cir. 1976) the
Court went as far as reversing a conviction without an evidentiary
hearing when affidavits from witnesses disclosed that a prosecutor
made repeated threats and warnings to potential witnesses culminating
in a highly intimidating personal interview.

In any event, by it's very nature, recantation of prior testimony, at a minimum, supports that there was a conflict in previous testimony which would give rise to a need for a credibility determination through an evidentiary hearing, <u>Pal v. INS</u> 204 F.3d 395 (9th Cir. 2000).

As the Court in <u>Santos</u>, supra stated,

> "...recantation is conflicting and inconsistent with earlier alleged Statements and that under all circumstances the credibility of the affiant's recantation cannot be determined without a hearing."

This instant petitioner is confident that, as the Court reviews the following affidavits, it will determine that an evidentiary hearing is necessary.

*   The Petitioner would bring to this Honorbale Court's attention that he is in the process of obtaining the requisite affidavits mentioned herein. In an effort to expidite this motion before this court, the petitioner has submitted this instant petition absent the affidavits, however, the petitioner represents to this court that upon obtianing them, the affiants will either mail them directly to this courts attention, or otherwise this petitioner will gather them and submit them to this court collectively.

Respectfully Submitted,

*Elijah B. Williams*

Elijah Bobby Williams
Petitioner
pro-se

-32-

CERTIFICATE OF SERVICE

28*h I hereby certify that the foregoing motion was mailed on this
_28th_ day of ~~████████~~, 2018, postage pre-paid, first class mail
addressed to: *march, 2018,*

Warden ~~L.J. Shartle~~                    *Warden Mr. Rhodes*
USP Tucson                                  *FCC. Tucson*
P.O. Box 24550                              *9300 South Wilmot Road*
Tucson, AZ 85734                            *Tucson, Az. 85754*

        I further certify that the above is true and correct subject
to the penalty of perjury pursuant to 28 USC §1746.

So sworn this _28th_ day of *march, 2018*

                                    *Elijah B. Williams*
                                    Elijah Bobby Williams
                                    #02152-748
                                    Petitioner
                                    pro-se
                                    USP Tucson
                                    P.O. Box 24550
                                    Tucson, AZ 85734